515-0323, Mount Vernon Police Department v. Employer v. Workers' Compensation Comm'n Mr. Polices of the Court, my name is Neil Gifhorn from Keith and Nepali. I'm here on behalf of the City of Mount Vernon this morning. The issue on appeal is a fact-based question as to accident and causal connection. And we would ask that the Commission decision be affirmed and the decision of the Circuit Court be reversed. Even if the Reviewing Court, being the Circuit Court, disagrees and could draw a different inference from the evidence, the Reviewing Court cannot reject that. Why don't you just tell us why the decision of the Commission was not against the manifest way? Fair enough. I think that the Commission puts a lot of emphasis and weight on the chronology. And the chronology is important here and I think it's equally important, if not more important, to see who the witnesses were involved here. The witnesses involved were police officers. They admitted that they had special training in how to do accident reports, document histories, and the chronology doesn't support that Mr. Taylor hurt his knee and tore his patellar tendon in the original incident. The original accident report, I think, the original arrest report is very important that it goes into great detail about an injury to his forearm. It drew blood. There's no mention of his knee. He works for a period of time, makes no mention of his knee. He goes and seeks medical treatment and tells the nurse practitioner, who turns out to be a personal friend of his, he has complained to her outside of her practice before about his knee. And the history there is he was working on his toilet and he was wrestling with a co-worker. There's an MRI that shows there's a major issue with his knee. And then all of a sudden the history becomes that his knee was involved in this altercation. Okay, so medical history obviously conflicts with and does not support the claimant's claim, correct? That's correct. And then you get Nagalski. He opined that the claimant's right knee injury was not attributable to the accident. You've got Dr. Moll on the other side. But the commission found Moll's possession opinion is unpersuasive because it was based on the assumption the claimant experienced pain in his right knee after the incident, a premise which the commission found unsupportive. That's correct. So the evidence is conflicting. The commission really didn't believe the claimant. So that's why you're saying it's against the medical history. And that's in the purview of the commission. That is their specialty duty. Case law over and over and over again says when there's conflicting evidence like that, the commission's decision stands. And that's where the circuit court went wrong, you're saying. That's correct. Okay, we got it. Based upon that, I would request that the decision of the commission be affirmed. And unless there's anything else, I'll rise. Thank you. Thank you, counsel. You have time to reply. Thank you. Your Honor, my name is Tom Rich. Good morning. Everything that you've asked has been right on point, and I'll get right to it too. I'd like you to take a look at page 7 of the commission's decision. That's an important part because it says, and I quote, The second report is the Form 45, which is dated approximately one month later and which, again, addresses the altercation. But oddly enough, contains the diagnosis of a torn patellar tendon in petitioner's right knee prior to petitioner seeking any medical care. So my client, who's sitting in the back row, by the way, he wanted to come here. He's never been to any of these things. He's been a cop for a number of years. Somehow goes, gets an MRI, self-diagnoses, and fills out an excerpt report that says torn patellar tendon. I'm not saying that the commission's decision is against the manifest way to the evidence. I'm saying it's wrong. It's like pointing at that clock and saying it's new. So you're saying there was an aggravation of a preexisting injury? Of course not. What I'm saying is, Your Honor, that the commission, in their quoting of this paragraph that I just read to you, they say somehow petitioner self-diagnosed, number one, and number two, reported a torn patellar tendon on the Form 45 before... Counsel, the very first time that your client sought medical treatment for this knee injury was November the 19th. Is that correct? Absolutely. It happened on October the 16th. Now, assume that the circuit judge is right, that the date of November the 16th, 2012, that's on this Form 45 is wrong, and it actually happened on the 26th. You're still stuck with Nagelski's opinion stating, wait a minute, if this guy injured his knee on October the 16th, he couldn't walk on it. Two things, direct answer to your question. Number one, only 25% of the patellar tendon was torn. Wait a minute, but this is, the commission knew all of this. They knew every bit of it. So the only thing that you can point to is an alleged mistype of the date on November 16th, and they say that he diagnosed it before it was actually told to him by McGee. But other than that, what about the statement in the 19th report saying it was caused by wrestling with a co-worker, or doing work on his knees replacing a toilet? Would she make that up? Which one do you want me to answer first? It's only one question. Okay. On November 16th, exactly a month after the altercation, he completed this accident report. Okay, we're on the same page. The subject resisted arrest, and he had to take the subject to the ground and fight with him on the ground. Mr. Rich, I understand that, but why did Nurse McGee write that it happened from wrestling with a co-worker or doing work on his knees replacing a toilet?  Nurse McGee wrote he was wrestling with a subject who was resisting. That's what it says in the record. If you take a look at this, and it's on page 3, paragraph 8 of the commission decision, he next reported he's been wrestling around, quote, with a co-worker. The commission chose to ignore the fact that Petitioner was not wrestling with a co-worker. He was subduing a combative subject. Wait a minute. That presupposes the commission believes that the injury to the knee occurred on October the 16th as opposed to some other time. What about this replacing a toilet? Okay, I'll get to that in a second. Dr. Nagolsky stated, quote, and this is the second part to your question, the operative report, that's objective evidence, states that Petitioner sustained a torn patellar tendon which was surgically repaired. Dr. Nagolsky in the record on page 266, and I'd ask you to take a look at that, expressly stated, quote, I don't believe he had an injury, so the question you're asking me is not really answerable. This is clearly not the case from the objective evidence, the MRI, the report of Dr. Freehill, the operative report, and the opinion of Dr. Maul. You also asked me about a toilet, and all kidding aside, there's not one of us in this room that hasn't knelt in front of a toilet for one reason or another, whether to fix it or whether, you know, maybe we had a couple too many beers the night before. The patellar tendon is one of the toughest tendons in the body. I have never in my life seen a patellar tendon tear come from kneeling in front of a toilet. Counsel, here, you know, you talk about Nagolsky, you cherry pick him. Nagolsky was asked, testified that the claimant presented with symptoms consisted with a diagnosis of a patellar tendon defect, and he agreed that the surgery performed by Maul was appropriate. You're trying to make it sound like Nagolsky testified the man didn't have an injury. That's simply not the case. No, I completely disagree. Be fair. No, I am fair. Dr. Nagolsky, I wish was fair. I'd pay big money if Dr. Nagolsky was fair. I took his deposition yesterday, and it's not in the record, so I can't tell you about it. But take a look at page 266. Please. I'm asking you. I've read the man's testimony. Did he testify that the claimant presented with symptoms consistent with a diagnosis of patellar tendon? Yes or no? Of course. Of course he did. And did he agree that the arthroscopic surgery performed by Maul was appropriate? Yes, he did. There's no question about that. So why are you suggesting that he testified the man didn't have an injury? Because, quote, I don't believe he had a specific injury. So the question you are asking me is not really answered. And what was the question? On page 266. The question is whether a torn patellar tendon could result from kneeling. Right, exactly. And his answer was, I don't believe he had an injury. Yeah. So he testified the man wasn't injured. Damn near. That's the way I read it. Be fair. I'm not only being fair with the record, but I've known Dr. Nagelsky for a long time, and quite honestly, Your Honor, Dr. Nagelsky, this is a typical answer for him. And I wasn't surprised to get it. And in addition, I'm delighted I got it because it shows exactly where he's coming from. In other words, if you're on the ground like this, your patellar tendon is right in front. You're kneeling. You've got a towel on. You're right here. Mr. Rich, please. This is not the commission. This isn't show and tell. I'm sorry, Your Honor. It's an appellate court. And we are arguing. Yes, sir. Let me ask a question. Sure. As far as this issue about wrestling with a co-worker, what did the nurse's note actually say? Did it say wrestling with a co-worker or did it? Wrestling with a subject. Did it say wrestling with a co-worker? He had assistance from a co-worker, but he was subduing. He had assistance from a co-worker. Did he say wrestling with a co-worker? Did he? I want you to read it for us. Read this section out of the record. I have three pages, Judge. The record is in my file. But the fact of the matter is he and a co-worker were attempting to take this individual down. Well, we understand that's what he said. Yeah. And that's what the nurse wrote down and that's what happened. That's what's in the history. Well, that's what I'm trying to figure out. Are you saying that the commission, the nurse wrote down wrestling with a subject, but the commission said that the nurse wrote down wrestling with a co-worker? Yes, the commission. Is that what your position is? The commission's interpretation characterizes Petitioner's incident as, in fact, horseplay. And that interpretation is based upon his testimony or what was it based on? I understand where you're going. What Justice Hoffman was asking me, sir, about the note from. . . Well, I know that, but, I mean, it seems like we've got wrestling with a co-worker, which gives an impression of horseplay versus the incident, which you're saying involves taking down a 16-year-old and getting back up to help subdue a suspect. Yes, sir. Which involved a co-worker. Yes, sir. Okay. So what you're saying is that co-worker description is misleading because it's talking about the incident of subduing a subject. Yes. In other words, you're not wrestling just with a co-worker. You and the co-worker are attempting to take down the suspect together. So when the commission writes that, where did they get that off on the wrong track? The testimony of the claimant or . . . No, I think this was the commission putting their spin on it. And I'll read it again. Page 3, paragraph A of the commission decision. I didn't read this before, I'm sorry. Quote, he next reported he's been wrestling around with a co-worker and was unsure what caused the injury. That's what they wrote in the decision. What he told the nurse practitioner was, I was helping a co-worker subdue a subject. That's what happened. And what did the nurse's note, again, say specifically? We know that the commission gave it a spin, different than apparently what he told the nurse. What did the nurse's original note say? Petitioner, in this case Officer Taylor, was assisting a co-worker in an attempt to take down an unruly student. It wasn't even a suspect. He was called to a school. Right, but the note said, in an attempt to take down somebody else. Yes. Yes, sir. Okay. That's absolutely correct. Last but not least, this case was originally decided in favor of Petitioner by the arbitrator. We had a chance to review Petitioner's demeanor, his credibility, assess his veracity as a witness. Petitioner won. The commission took it away. I went to Mount Vernon and asked Judge Franklin to turn it around and said, Your Honor, given the inaccuracy, it's not a manifest way case. These records are wrong. I said, will you please turn it around? They did. I note here today that I'm the only Petitioner that won. I was looking at the lineup. The commission's taken away everything from everybody. And the circuit court put this case back. Officer Taylor's conduct during this attempt to take down the student was exemplary. He tried to continue to work. I don't think he should be punished for that. And the fact of the matter is, you don't tear up a teller tendon by kneeling on the ground in front of a case. He gets taller. Thank you. Thank you, Counsel. Counsel, you may reply. Thank you. If it pleases the Court, I will read to you, because there's been a lot of confusion over exactly what Nurse Practitioner McKee McKee's note for us, please, word for word. Yes, Nurse Practitioner McKee's note. And I think it's important that Nurse McKee, Nurse Practitioner McKee, is the wife of Petitioner Whitman. Counsel, we're not here to judge credibility. Just read the note. Fair enough. History of present illness. Clint is a 36-year-old male who comes into the office. Over the past two weeks, without any injury or trauma, he reports he has been wrestling around with a co-worker. He was unsure if that caused the injury. He reports he was also doing work on his knees, replacing a toilet, and that may also be causing the pain. There's no mention whatsoever in these records the initial office visit of an arrest of a combative assailant, and you're talking about a nurse practitioner whose husband is a police officer who knew Mr. Taylor personally and had seen him several times between these incidents socially at home where he admits he complained about his knee. I think that that in and of itself speaks volumes for what the commission was focusing on. The initial medical records don't show anything about a combative 15-year-old youth who he was trying to arrest. It says he was wrestling with a co-worker. If there's some issue about that, Petitioner could have cleared that up at trial. They did not. The records speak for themselves. That is in Respondent's Exhibit 3, I believe, the Certified Records of the Orthopedic Institute of Southern Illinois. I would also point out that the date on the Form 45 is what it is. Again, Petitioner could have corrected that at trial if he thought that there was an error with that. The quote from McGee that you read is the quote I have. I understand what the quote was. He never said he was wrestling a perpetrator. But it's fair. The incident report is dated the 19th, but it says it was received by the Mount Vernon Police Department on November the 27th. So, I mean, I don't think he put it in his back pocket and kept it there for a week. No, I agree with you. But I think that when the Commission is interpreting the evidence in the record, it's in their purview, their specialty, to make that decision. And I don't think that they're pointing out that there was a discrepancy in the date of that report. I don't think that's a manifest error. That was not the sole focus of their decision. And I would also point out, too, that Petitioner indicated that, I'm sorry, Mr. Taylor's attorney pointed out that he won before the Arbiter. And the Arbiter's decision is irrelevant. It's the decision of the Commission that we're all focusing on. And I would again request that the decision of the Commission be affirmed. Thank you. Okay. Thank you, counsel, both for your arguments in this matter. We'll be taking our advisement. A written disposition shall issue.